OPINION
{¶ 1} Ann Hunter was found guilty by a jury in the Champaign County Court of Common Pleas of attempted felonious assault and assault on a local corrections officer. The court found that these offenses were allied offenses of similar import and merged them for sentencing. Hunter was sentenced to five years of imprisonment for attempted felonious assault, which was the maximum sentence for the offense. She appeals.
 {¶ 2} In December 2003, Hunter was indicted for felonious assault and attempted felonious assault related to an attack on a corrections officer at the Tri-County Regional Jail in Champaign County. The felonious assault charge (Count One) was later dropped. Hunter was tried by a jury on March 9, 2004, and was found guilty of attempted felonious assault (Count Two). Hunter appealed from her conviction, arguing that the trial court had erred in failing to instruct the jury on the lesser included offense of attempted assault. We agreed. We reversed Hunter's conviction on February 4, 2005, and remanded for a new trial.State v. Hunter, Champaign App. No. 2004 CA 5, 2005-Ohio-443.
 {¶ 3} In April 2005, the grand jury returned an indictment against Hunter which contained an additional count of assault on a local corrections officer (Count Three), also based on the events that had been the subject of the previous trial.[1]
In May 2005, Hunter was tried by a jury on charges of attempted felonious assault (Count Two) and assault on a local corrections officer (Count Three). She was found guilty of both counts. For purposes of sentencing, the trial court merged the two offenses after determining that they were allied offenses of similar import. It sentenced Hunter to five years of imprisonment for attempted felonious assault.
 {¶ 4} Hunter raises two assignments of error on appeal.
 {¶ 5} I. "THE JURY'S VERDICT IN THE CASE AT HAND WAS CONTRARY TO THE WEIGHT AND/OR SUFFICIENCY OF THE EVIDENCE."
 {¶ 6} Hunter contends that her conviction was against the manifest weight of the evidence and/or supported by insufficient evidence. We note, as we have in many previous cases, that these standards are distinct. A sufficiency of the evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." In contrast, when reviewing a judgment under a manifest weight standard of review, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction."Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 7} We begin by examining the evidence presented at trial.
 {¶ 8} The victim of the alleged attack, Heather Brown, testified that she was a corrections officer at the Tri-County Jail at the time of the attack. Brown and other corrections officers testified that Hunter's violent and insulting behavior toward law enforcement officers was well known to them and that, for this reason, she had been placed in a special area of the jail known as the "glass house." The cells in the glass house afforded additional security measures, including a slot in the door through which food could be provided. When Brown and another officer, John Stamper, took food to Hunter on December 9, 2003, Hunter was in the near corner of the cell where she could not be seen through the closed door. The officers were unable to open the food slot, so they requested that Hunter's cell be unlocked by central control. When Brown stepped into the room with Hunter's food, Hunter lunged toward Brown's abdomen with an eating utensil in her hand. The handle of the plastic eating utensil, a "spork," had been sharpened to somewhat of a point, whereas its handle usually had a blunt end. Hunter did not make contact with Brown, and Stamper promptly intervened to take Hunter to the ground. The officers then confiscated the spork. Due to prior incidents, Hunter was not supposed to have a spork in her cell at the time of the attack, and it is unclear how she obtained one. Brown and Stamper testified to their beliefs that the modified spork used by Hunter had been capable of penetrating the skin and causing serious injury. Specifically, Stamper testified that the sharpened handle of the spork enabled it to "penetrate bodily parts easier and it could make contact with vital organs. It would be easier to poke somebody with it, and the sharpened edges would make it easier to rip and tear the skin." Brown testified that she believed that she could have been injured if Hunter had made contact with her, as Hunter had been "jabbing very hard and forcefully."
 {¶ 9} In Hunter's case, the operative definition of felonious assault was to "knowingly * * * cause serious physical harm to another * * *. R.C. 2903.11(A)(1). To assault a local corrections officer is to "knowingly cause or attempt to cause physical harm to another" who is an employee of a local correctional facility. R.C. 2903.13(A), (C)(2)(b).
 {¶ 10} The state's evidence, if believed, was sufficient to convince the average mind of Hunter's guilt of attempted felonious assault and assault on a local corrections officer beyond a reasonable doubt. In other words, after viewing the evidence presented in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Accordingly, Hunter's conviction was supported by sufficient evidence.
 {¶ 11} We also conclude that Hunter's conviction was not against the manifest weight of the evidence. Based upon the testimony presented, the exhibits, and the inferences that could be drawn therefrom, the jury could have reasonably concluded that Hunter knowingly attempted to cause serious physical harm to Brown. As such, the jury did not clearly lose its way or create a miscarriage of justice in convicting Hunter.
 {¶ 12} The first assignment of error is overruled.
 {¶ 13} II. "THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING THE MAXIMUM SENTENCE."
 {¶ 14} Under this assignment of error, Hunter takes issue with the trial court's determination that she had committed the worst form of the offense for which she was convicted and its imposition of the maximum sentence.
 {¶ 15} The Supreme Court of Ohio recently held that parts of Ohio's felony sentencing scheme are unconstitutional. State v.Foster, ___ Ohio St.3d ___, 2006-Ohio-856. The unconstitutional provisions include R.C. 2929.14(C), which states that a court may impose the maximum sentence for an offense upon finding that the defendant had committed the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, and upon certain major drug offenders and repeat violent offenders. Following the United States Supreme Court's decisions in Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, the supreme court held inFoster that R.C. 2929.14(C) is unconstitutional because it "require[s] judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant." Foster at ¶ 83. The supreme court severed the provisions that it found to be unconstitutional, including R.C. 2929.14(C). Id. at ¶ 99. In light of this holding, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or to give their reasons for imposing maximum sentences. Id.; State v. Mathis, ___ Ohio St.3d ___, 2006-Ohio-855, ¶ 37.
 {¶ 16} Because Foster held the statute under which Hunter's sentence was imposed to be unconstitutional and severed it from the sentencing provisions of the Revised Code, we must remand Hunter's case for a new sentencing hearing. Foster at ¶ 104-105. At the sentencing hearing, the trial court "shall consider those portions of the sentencing code that are unaffected by [Foster] and impose any sentence within the appropriate felony range." While Hunter may argue for a reduction in her sentence, nothing prevents the trial court from imposing the same sentence on remand.
 {¶ 17} The second assignment of error is sustained.
 {¶ 18} The sentence is reversed, and the matter is remanded for resentencing. The trial court's judgment is affirmed in all other respects.
Grady, P.J., and Donovan, J., concur.
[1] A second count of assault on a local corrections officer (Count Four) was also contained in the April 2005 indictment, but that offense was tried separately.